

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-18-2007

# Baksha v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2055

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Baksha v. Atty Gen USA" (2007). *2007 Decisions.* Paper 933.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/933

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-2055

———————

MOHAMMED ELAHI BAKSHA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

———————

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A70-704-079
(U.S. Immigration Judge: Honorable Alberto J. Riefkohl)

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 27, 2007
Before:  SCIRICA, Chief Judge, FUENTES and ALARCÓN*, Circuit Judges.

(Filed June 18, 2007)

———————

OPINION OF THE COURT

———————

SCIRICA, *Chief Judge*.

Mohammed Elahi Baksha petitions for review of the Board of Immigration

Appeals' order affirming an Immigration Judge's denial of his applications for political

———————

*The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial
Circuit, sitting by designation.

asylum, withholding of removal, and relief under the Convention Against Torture

("CAT").  We will deny the petition and affirm the BIA's order.

I.

Baksha, a native of Pakistan and citizen of Bangladesh, entered the United States

on a thirty-day business visa on August 28, 1992, and has remained here ever since.  He

filed an initial application for political asylum in February 1993, and an amended

application on July 27, 1998, on which date he was interviewed by the INS's Asylum

Office.  His application was denied, and on August 5, 1998, the INS served Baksha with a

notice to appear charging that he had overstayed the term of his visa and was removable

from the United States.  At a hearing before the IJ on April 7, 2000, Baksha conceded his

removability, but renewed his request for political asylum, and also sought withholding of

removal and CAT relief.

According to his application and testimony, Baksha was a successful businessman

in Bangladesh, as well as a prominent supporter (though notably not a member) of the

Jatiya political party.  Beginning during the Jatiya party-led government's 1990 collapse,[1]

Baksha contended that he and his family were subjected to surveillance and violent

threats by members and operatives of the Jatiya party's political opponents, the

---

[1] The Jatiya party-backed president stepped down on December 6, 1990, but Baksha characterized the government's collapse as a "gradual" one occurring in "late 1989–90." (J.A. 549.)

Bangladesh National Party ("BNP") and the Awami League.[2] He contended that, in November 1990, he narrowly escaped an attempt on his life orchestrated by the leaders of the rival parties. Baksha also contended that he was forced to resign from his position as Director of Operations of a shipping company for reasons related to his political opinion: after undertaking an investigation in August or September 1990 into embezzlement at the Khulna Diabetic Association (a charity he had founded), Baksha discovered that the individuals responsible were two executives affiliated with the BNP and the Awami League; those executives convinced two of Baksha's fellow Directors at the shipping company (who were also affiliated with the rival parties) to force Baksha out. Having lost his business and position in society, Baksha contended he went into hiding for two years, while his family members were forced to disperse. He contended he never contacted the police because he feared they, too, were controlled by the rival parties. He contended he expected them to jail him should he return to Bangladesh, where his family still lives. He contended his family members have continued to be subjected to violent threats, that his son was detained by the police for several hours in 1993, and that one of his daughters was forced to marry a BNP-backed gang leader.

The IJ denied Baksha's requests for relief in a July 17, 2000, decision, finding Baksha had failed to make a sufficient case of persecution to receive asylum and also

---

[2] The Awami League was in power (as part of a coalition of which the Jatiya party was also a member) at the time of Baksha's hearing before the IJ. But the BNP is currently the majority party.

stating his testimony had "left doubts about his sincerity and truthfulness." (J.A. 66.) The IJ ordered Baksha removed to Bangladesh, granting him the right of voluntary departure. Baksha appealed the IJ's ruling to the BIA on August 16, 2000. In an April 22, 2003, decision, the BIA affirmed the IJ's conclusion that Baksha had failed to establish either past persecution on the basis of his political opinion in Bangladesh or a well-founded fear of persecution should he return, and dismissed his appeal. Specifically, the BIA found that the mistreatment Baksha and his family allegedly suffered in Bangladesh had not risen to the level of persecution, and that they had not been targeted on the basis of one of the five statutory protected grounds for asylum. The BIA reversed the IJ's adverse credibility determination because the IJ had failed to "provide adequate support for his statements questioning [Baksha's] credibility." (J.A. 2.)

The BIA had jurisdiction to review the IJ's order under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review the BIA's final order under 8 U.S.C. § 1252(a). Under 8 U.S.C. § 1252(b)(4)(B), "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Factual findings must be upheld if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). We have noted this is a deferential standard of review. *See Jarbough v. Attorney Gen.*, 483 F.3d 184, 191 (3d Cir. 2007) ("[W]e are not triers of fact, and Congress mandates that we leave the agency's factfinding undisturbed unless the evidence *compels* a contrary conclusion."). The substantial evidence standard applies to determinations whether an

4

alien has experienced past persecution or has a well-founded fear of persecution, *see Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001), as well as credibility determinations, *see Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).

## II.

An applicant for asylum on the basis of past persecution must show: (1) one or more incidents that rise to the level of persecution; (2) that occurred on account of his or her race, religion, nationality, membership in a particular social group, or political opinion; and (3) that were committed by the government or by forces the government was either unable or unwilling to control. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003); 8 U.S.C. § 1101(a)(42)(A) (2006) (defining "refugee"). In order to establish a well-founded fear of persecution on account of one of the five statutory protected grounds for asylum, an applicant must "show that he has a subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility." *Abdille*, 242 F.3d at 496. "A showing of past persecution raises a presumption of a well-founded fear of future persecution." *Abdulrahman*, 330 F.3d at 592.

Persecution "is an extreme concept that does not include every sort of treatment our society regards as offensive." *Fatin v. INS*, 12 F.3d 1233, 1243 (3d Cir. 1993). "Abusive treatment and harassment, while always deplorable, may not rise to the level of persecution." *Jarbough*, 483 F.3d at 191. But physical abuse is not a prerequisite—persecution may also take the form of "deliberate imposition of severe economic disadvantage which threatens a petitioner's life or freedom." *Li v. Attorney*

5

*Gen.*, 400 F.3d 157, 168 (3d Cir. 2005). The economic persecution standard is stringent, but not insurmountable. *See id.* at 168 n.7 ("[T]he economic harm . . . must be severe, [but] we do not require complete loss of all means of earning a livelihood, nor do we require evidence of near-starvation, for economic restrictions to rise to the level of persecution.").

The BIA found "the mistreatment [Baksha] claimed that he and his family experienced does not rise to the level of persecution." (J.A. 2.) According to the record, Baksha and his family were subjected to surveillance and violent threats. Baksha himself narrowly escaped an attack by unidentified assailants, and his son was detained by the police on one occasion. Additionally, Baksha was forced to resign from his corporate position. Baksha's mistreatment makes a strong case for past persecution, but we do not review this determination de novo. Under the deferential substantial evidence standard, we cannot say that this record compels a finding of past persecution. Likewise, the record does not compel a reversal of the BIA's conclusion that Baksha "was targeted by business associates because he had discovered they were stealing money and because they wanted him out of the business," and therefore "not . . . on the basis of one of the five statutory grounds." (J.A. 3.) There was substantial evidence in the record on this point, including Baksha's own testimony that the catalyst for the November 1990 attack (which actually occurred while the Jatiya party was still in power) was his investigation into embezzlement at the Khulna Diabetic Association. He also stated on cross-examination

6

that his fellow Directors may have wanted to force him out of his corporate position so that they could embark on a new business venture.

Perhaps most significantly, the BIA concluded Baksha had "not offered any evidence to indicate that he now has a reasonable possibility or a clear probability of facing persecution on account of his political opinion or his membership in a particular social group if he is forced to return," again noting that the persecution he allegedly feared was not on account of one of the five protected statutory grounds for asylum. (J.A. 3.) Again, regardless of how we might decide the question de novo, the record does not compel us to conclude to the contrary. In his amended asylum application, Baksha contended he would fear for his life if he should be returned to Bangladesh. When asked before the IJ exactly what he feared would happen, Baksha referred to the accused embezzlers, among others, and said: "They will start doing the same thing." (J.A. 132.) Though he had never been arrested previously, he testified that he would be jailed and would suffer greatly if he returned. The objective component of the reasonable fear of persecution standard "requires a showing by credible, direct, specific evidence in the record that persecution is a reasonable possibility." *Leia v. Ashcroft*, 393 F.3d 427, 433 (3d Cir. 2005). We will not reverse the BIA's conclusion that Baksha made an insufficient showing of a well-founded fear of persecution.[3]

---

[3] The BIA also concluded Baksha had failed to establish eligibility for withholding of removal and CAT relief. An applicant for withholding of removal must show a clear probability that he or she would be subjected to persecution if removed, and an applicant

(continued...)

## III.

We will deny the petition and affirm the BIA's order.

---

[3](...continued)
for CAT relief must show it is more likely than not that he or she would be tortured if removed. Because we conclude the BIA's determination that Baksha failed to establish eligibility for asylum was supported by substantial evidence, it follows that the determinations under the more rigorous standards were also supported by substantial evidence. *See Zubeda v. Ashcroft*, 333 F.3d 463, 469–70 (3d Cir. 2003) ("[I]f an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation.").