**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2551
_____

WEN QIN SHI,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A070-868-574)
Immigration Judge:  Honorable Donald Vincent Ferlise

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 29, 2014
Before:  CHAGARES, GARTH and SCIRICA, Circuit Judges

(Opinion filed:  March 19, 2014)
_____

OPINION
_____

PER CURIAM

        Petitioner Wen Qin Shi is a native and citizen of China who entered the United

States in 1997, and is removable under 8 U.S.C. §§ 1182(a)(6)(A)(i) & (a)(7)(A)(i)(I), as

an alien present in the United States without being admitted or paroled, and without a

valid entry document. Shi has two children, both United States citizens. Along with her husband, Rong Hua Cai, Shi applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) on the basis of the family planning policy in China, her marriage in the United States, and her two American-born children. The Immigration Judge denied the applications after determining that both Shi and her husband were not credible, and that her fear of sterilization was not well-founded; the Board of Immigration Appeals (BIA) affirmed. More than a decade later, in January 2013, Shi filed a motion to reopen the proceedings. The BIA denied the motion as untimely, and further declined to exercise its sua sponte authority to reopen proceedings, 8 C.F.R. § 1003.2(a). Shi has timely petitioned for review.

We review the BIA's decision to deny a motion to reopen for abuse of discretion. Filja v. Gonzales, 447 F.3d 241, 251 (3d Cir. 2006). Under this standard, the BIA's decision may be reversed only if it is "arbitrary, irrational, or contrary to law." Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002). We are without jurisdiction to review the Board's decision declining to exercise its sua sponte authority to reopen proceedings. See Calle-Vujiles v. Ashcroft, 320 F.3d 472, 475 (3d Cir. 2003).

A petitioner seeking to reopen a hearing after the 90-day deadline must show that the basis of the motion is on changed country conditions, and the evidence supporting the motion could not have been discovered or presented at the previous proceeding. See 8 U.S.C. § 1229a(c)(7)(C)(ii). Shi alleged that, since the final order denying her application for relief, she has become a devout Catholic and would face religious

2

persecution should she return to China.[1] As the Government notes, Shi's decision to convert to Christianity reflects a change in her personal circumstances, which is insufficient to excuse her from the 90-day time limit on the motion to reopen. See Liu v. Att'y Gen., 555 F.3d 145, 151-52 (3d Cir. 2009). Her "choice to engage in such [religious] activities after being ordered deported does not support application of the changed country conditions exception." Khan v. Att'y Gen., 691 F.3d 488, 497 (3d Cir. 2012). The relevant inquiry, then, is whether Shi has presented sufficient evidence which was previously unavailable or undiscoverable to demonstrate a material change in treatment of Catholics in China since her asylum hearing. See Liu, 555 F.3d at 148.

To support her contention that country conditions had changed in China, Shi provided evidence in the form of letters from family and neighbors indicating that individuals have been persecuted on account of their faith. The BIA discounted Shi's individualized evidence in part because it had not been substantiated. It noted that Shi failed to present any credible evidence in the form of "arrest records, police reports, detention release certificates . . ." or otherwise to support the statements. The Board also found that the documents were "created for the purpose of litigation and are from interested witnesses who are not subject to cross-examination." See Chen v. Gonzales, 434 F.3d 212, 218 (3d Cir. 2005) (noting that only corroboration was a letter from a family member who did not witness incident and who was not subject to cross

---

[1] Shi had also alleged, inter alia, that she would face persecution under China's coercive population control policies. She has limited her petition for review to the religious persecution claim.

examination). Discounting this evidence was clearly not an abuse of discretion. The letters fail to provide specific names or dates regarding the purported persecution, and instead include very broad unsupported allegations. Shi failed to explain why sufficient corroborating materials were unavailable to support the letters. See generally Zhu v. Att'y Gen., ___ F.3d ___, 2014 WL 815133, at *7 (3d Cir. Mar. 4, 2014) (discussing ways a petitioner can attempt to authenticate evidence, including through corroborating materials). The letters also clearly indicate that they are written exclusively for the purpose of the immigration proceedings. Contrary to Shi's contention, the Board did not wholly fail to consider her evidence; rather, it determined, and we agree, that the evidence was of insufficient evidentiary value to warrant reopening the proceedings.[2]

The BIA further considered two U.S. Department of State reports proffered by Shi—the 2011 Report on International Religious Freedom and the 2011 Country Report for China. These reports indicate that China currently allows the practice of Christianity, although there is continued harassment of church members.[3] Although Shi provided

---

[2] We note that the Board erred to the extent that it relied, "in part," on a previous adverse credibility determination to discount the evidence supporting the religious persecution claim. The adverse credibility finding, made by the IJ, related to Shi's family planning claim. Because there is no nexus between the adverse credibility determination and Shi's religious persecution claim, the Board improperly relied on it. See Guo v. Ashcroft, 386 F.3d 556, 562-63 (3d Cir. 2004) (requiring a nexus between previous credibility findings and the issue under consideration). Nevertheless, because the Board provided an independently sufficient basis for discounting the claim, any resulting error was harmless.

[3] We take issue with our dissenting colleague's assertion that our case law requires the BIA to rely on the most recent country conditions report in order to provide meaningful review. As the dissent correctly notes, we have stressed the value of the BIA's

4

numerous articles which generally describe an increase in religious persecution in China, the BIA concluded that she failed to provide credible individualized evidence that *she* would be subject to persecution and, therefore, her claim was too speculative. See In re S-Y-G, 24 I. & N. Dec. 247, 251-52 (BIA 2007); see also Shardar v. Att'y Gen., 503 F.3d 308, 316 (3d Cir. 2007) (holding that an asylum applicant must make a showing of a particularized threat of persecution). This conclusion cannot be said to be "arbitrary, irrational, or contrary to law." Sevoian, 290 F.3d at 174.[4]

---

consideration of current country conditions reports, and, to that end, we have "urged the BIA" to adopt policies which will ensure that administrative records are up-to-date. See Sheriff v. Att'y Gen., 587 F.3d 584, 591 (3d Cir. 2009). We have also suggested that, where an individual has shown past persecution (unlike Shi), the BIA may not rely solely on outdated country reports to rebut the alien's fear of future persecution. See Leia v. Ashcroft, 393 F.3d 427, 437 (3d Cir. 2005) (citing Berishaj v. Ashcroft, 378 F.3d 314, 329 (3d Cir. 2004)). We have stopped short, however, of imposing a general requirement on the BIA to consider, on its own, the most up-to-date country reports. Accord Meghani v. I.N.S., 236 F.3d 843, 848 (7th Cir. 2001) ("However, we find no cases in which we held that the BIA is *required* to *sua sponte* take administrative notice of the most recent country report, and [petitioner] cites no cases holding such.") (emphasis in original). The burden of proof is on the asylum seeker, 8 C.F.R. § 1208.13(a), and the BIA has "'a duty to explicitly consider any country conditions evidence submitted by an applicant that materially bears on [her] claim,' and '[a] similar, if not greater, duty arises in the context of motions to reopen based on changed country conditions.'" Zheng v. Att'y Gen., 549 F.3d 260, 268 (3d Cir. 2008) (citation omitted); see also Zhu v. Att'y Gen., ___ F.3d ___, 2014 WL 815133, at *7 (3d Cir. Mar. 4, 2014) (remanding for the BIA to meaningfully review a more recent country conditions report which had been proffered by the petitioner as evidence of changed country conditions). There is no dispute that the Board fully considered the 2011 country conditions report proffered by Shi. Finally, while we agree with the dissent that we may take judicial notice of changed political circumstances that have occurred after an order of removal has been issued, Shi has not pointed to any specific information in a more recent country report that would have changed the outcome of this case. See Nbaye v. Att'y Gen., 665 F.3d 57, 60 (3d Cir. 2011).

[4] Significantly, Shi failed to sufficiently explain how past conditions faced by Catholics had in fact materially changed since the asylum hearing. We note that the State

5

We are persuaded that the BIA took adequate account of the evidence submitted in support of Shi's motion to reopen and that no reasonable factfinder would be compelled to find that there has been a material worsening since 2001 of China's religious repression policies. Accordingly, because Shi failed to demonstrate changed country conditions, the Board did not abuse its discretion in denying her motion to reopen.

---

Department's 2000 Country Report on Human Rights Practices for China indicates that "[u]napproved religious groups, including Protestant and Catholic groups . . . continued to experience varying degrees of official interference, repression, and persecution." A.R. at 489. The report was made part of the record at the time of the merits hearing and suggests continuing problems, rather than a change.

<u>Wen Shi v. Attorney General U.S.A.</u>, No. 13-2551

GARTH, *Circuit Judge*, dissenting:

Wen Shi, the Chinese petitioner in this matter, has been in the United States since 1997 and has two children who are United States citizens. Shi has alleged that she has become a devout Catholic and would face religious persecution as well as "coercive population control policies" if she were returned to China. As the majority observes correctly, the relevant inquiry in this case is whether Shi has shown "changed country conditions" that would lend credence to her claims that she would face persecution were she to be removed to her native country.[1]

In rejecting Shi's claim, the BIA concluded that she had failed to show changed country conditions because, *inter alia*: (1) the letters from family and neighbors that she submitted in support of her claim had not been substantiated and were not of the sort of evidence that we had deemed sufficient or credible in the past; and (2) the 2011 Religious Freedom Report and the State Department's 2011 Country Report failed to provide credible individualized evidence that Shi would be subject to persecution.

Unlike the majority, I conclude that the BIA abused its discretion in relying on an outdated Country Report to reject Shi's claims. We have noted that "in the troubled areas of the planet from which asylum claims tend to come, the pace of change is rapid –

---

[1] <u>See</u> 8 U.S.C. § 1229a(c)(7)(C)(ii) ("There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under sections1 1158 or 1231(b)(3) of this title and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding.").

1

oppressive regimes rise and fall, and conditions improve and worsen for vulnerable . . .

minorities." Leia v. Ashcroft, 393 F.3d 427, 437 (3d Cir. 2005) (internal quotation

omitted). Accordingly, we have "suggested that outdated country reports by themselves

are insufficient to rebut an individual's fear of persecution." Id.

We further explained the value of current Country Reports in Sheriff v. Attorney

Gen. of U.S., 587 F.3d 584 (3d Cir. 2009).

> In [Berishaj v. Ashcroft, 378 F.3d 314 (3d Cir. 2004) abrogated on other grounds by Nbaye v. Attorney General, 665 F.3d 57 (3d Cir. 2011)] we expressed our strong displeasure with the state of affairs presented by our appellate review of BIA decisions. Too frequently, we complained, the BIA was relying upon outdated and antiquated Country Reports not reflective of the state of affairs even at the time of the BIA's decision. See id. at 328-31 (discussing the problems presented by stale administrative records in asylum cases, and noting that "[i]t has become common that . . . country reports in the administrative record are three or four years old by the time the petition for review comes before us"). Accordingly, we urged the BIA to make greater use of procedures allowing for the reopening of proceedings based on new facts, and also urged the BIA "to adopt – by opinion, regulation, or otherwise – policies that will avoid the Court of Appeals having to review administrative records so out-of-date as to verge on meaningless." Id.

Sheriff, 587 F.3d 584, 591.

Indeed, in Zhu v. Attorney General, ___ F.3d ___, 2014 WL 815133 (3d Cir. Mar.

4, 2014), we recently addressed a similar situation and granted a Chinese immigrant's

motion to reopen where the BIA had failed to consider whether recent Country Reports

established changed country conditions. While the petitioner in Zhu appears to have

proffered a wider array of evidence than Shi, our decision and analysis there, requiring

the BIA to consider more fully the present Chinese policies in order to grant the

petitioner the requisite "meaningful review," indicates that we view China as a "troubled

2

area[]" where "the pace of change is rapid" and where the mutability of national policies must be considered with due care. Leia, 393 F.3d at 437.

Here, however, the BIA relied on a 2011 Country Report in order to make a determination regarding the "facts on the ground" in China in 2013. While I am mindful of the deferential standard of review afforded to the IJ and the BIA, see Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002) (stating that the BIA's decision may only be reversed if it is "arbitrary, irrational, or contrary to law"), I would hold that the use of an outdated Country Report to make a judgment about present conditions in Shi's case is both irrational and contrary to the principles that we articulated in Leia. To deny that country conditions have changed based on an outdated Country Report would be to deny that country conditions *can* change, a holding that would run counter to both logic and the plain language of 8 U.S.C. § 1229a(c)(7)(C)(ii) ("There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief . . . is based on changed country conditions . . ."). See note 1, *supra*.

This result is further supported by our decision in Nbaye to remand for consideration of *more recent* development in country conditions:

> It seems to us that it would be myopic to ignore the circumstance that the RPG has come to power in Guinea inasmuch as Nbaye attributes his persecution to membership in that party. We have concluded that although we cannot decide the case on the basis that there has been a change in power in Guinea, our precedents and 8 U.S.C. § 1252(b)(4)(A) on the one hand and the seemingly appropriate way to proceed in this matter on the other can be accommodated by remanding the case to the BIA so that it can consider the change in power in Guinea.

665 F.3d at 60. That is, even though Shi may not have provided the most recent Country Reports to the BIA, in light of our holding and analysis regarding Chinese Country

3

Reports in <u>Zhu</u>, it would be "myopic" to ignore the well-documented facts on the ground and affirm a BIA decision reached without considering them.

Accordingly, I would remand this case for reopening on the issues presented in light of the *most recent* Country Report, and in light of <u>Zhu</u>, which reinforces our precedents.  I respectfully dissent.