

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-13-2005

# Kelmendi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2545

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Kelmendi v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1025.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1025

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 04-2545
_____

NAIM KELMENDI

Petitioner

v.

ALBERTO GONZALES, Attorney General of the United States;
MICHAEL CHERTOFF, Secretary of Department of Homeland Security[*]


_____

On Petition for Review from the United States Department of Justice
Board of Immigration Appeals
BIA No. A79 300 332
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 9, 2005

BEFORE: AMBRO, VAN ANTWERPEN and TASHIMA,[**] Circuit Judges

(Filed: June 13, 2005)


_____

OPINION OF THE COURT
_____

---

[*] Both Attorney General Gonzales and Secretary Chertoff have been substituted in place of their predecessors pursuant to Fed. R. App. P. 43(c).

[**] The Honorable A. Wallace Tashima, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

VAN ANTWERPEN, <u>Circuit Judge</u>

Before us is Naim Kelmendi ("Petitioner") who petitions this Court to review and vacate an order of removal issued by the United States Department of Justice Board of Immigration Appeals ("BIA") on April 30, 2004. For the following reasons, we grant his Petition for Review, but only with regard to the BIA's conclusion that his asylum application was frivolous.

## I. Facts

Petitioner is a 43-year old native and citizen of Albania. He was admitted to the United States on a temporary B-1 visa on May 18, 2000, and failed to leave at the time of the visa's expiration. On December 20, 2000, he applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. The application was referred to the Executive Office for Immigration Review in Philadelphia, Pennsylvania for removal proceedings.

At an initial hearing before Immigration Judge ("IJ") Donald V. Ferlise, Petitioner conceded that he was removable, but renewed his applications for relief. He submitted copies of supporting documentation (including two Democratic Party membership cards and two Albanian court summonses), and the IJ ordered originals be submitted to the Immigration and Naturalization Service ("INS") for forensic testing. The INS issued a

report on November 7, 2002, reporting that the documents could not be authenticated because the documents could be easily obtained in Albania and they contained no security features or means of establishing that they were officially issued. (Administrative Record[1] at 206-07.)

A hearing on the merits of Petitioner's applications was held on March 11, 2003. At that hearing, the IJ held that he would not consider any of the documents other than two Democratic Party membership cards because the other documents were public records that had not been certified as required by immigration regulations.

Petitioner testified that he had been a member of the Democratic Party since 1990, and was responsible for encouraging young people to join the party, as well as for preparing slogans and speeches. (A.R. at 157-58.) He stated that he was a participant in all demonstrations and gatherings directed against the communist regime that was in power at that time, and had been arrested five or six times between 1990 and 1992. (A.R. at 159.) Petitioner alleged that he was severely beaten with clubs and was kicked for between five and eight hours while in custody, purportedly because he was part of an anti-communist movement. (A.R. at 159-60.) In 1992, the Democratic Party became the head of a coalition government, and all of Petitioner's problems with the authorities ceased. (A.R. at 161-62.) In fact, his brother was elected mayor of Tirana. (Id.) This respite was short-lived, as the Communists regained power in the election of 1997. (A.R.

_____

[1] Hereinafter "A.R. at ___."

at 162.) Petitioner testified that a Democratic Party candidate was assassinated in 1998, sparking demonstrations in which he participated. (A.R. at 164-65.) One month after the assassination, the local police allegedly took him into custody and accused him of attempting to incite a coup d'état. (A.R. at 165.) Petitioner stated that, the following year, he again was taken into custody and beaten for several hours. (Id.) He did not, however, seek medical treatment after he was released. (A.R. at 166.) When he was summoned to testify against a group of people accused of participating in the alleged coup, he went into hiding and sent his wife and children to live with relatives. (A.R. at 169-70.)

During cross-examination, and over objection, the Government questioned Petitioner about the documents that the IJ had previously deemed inadmissible. (A.R. at 188-89.) Petitioner admitted he had traveled to Greece on March 24, 2000, and had returned to Albania three days later. (A.R. at 182-88.) When asked for details concerning his trip, he testified first that he had been invited by the Greek government, but later stated that he actually traveled to Greece to assist in a private business deal. (Id.) When the IJ asked why he hadn't remained in Greece, he said he had to return to Albania to care for his family and that the Greek government would not grant asylum to Albanians. (Id.) The Government and IJ also questioned him as to discrepancies between his asylum application and testimony, specifically with regard to his permanent address and his occupation. (A.R. at 196-99.)

The IJ issued an oral decision at the conclusion of the proceeding. (A.R. at 119-

4

30.)  He concluded that Petitioner was not credible, noting that several contradictions and improbabilities in his testimony and evidence contributed to this finding.  The IJ further held that, even assuming Petitioner's testimony was deemed credible, there was insufficient evidence in the record to find that he had been a victim of past persecution or that he had a well-founded fear of future persecution.  The IJ denied Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture.  Finally, Petitioner's asylum application was deemed frivolous because the IJ believed he had falsified membership cards and had intentionally fabricated a false asylum claim.

Petitioner appealed to the BIA, which, on April 30, 2004, adopted and affirmed the IJ's decision with regard to Petitioner's failure to meet his burden to establish eligibility for the relief requested. (A.R. at 58-9.)  He then filed a Petition for Review with this Court.  Petitioner also filed a motion with the BIA for clarification of its April 30, 2004, decision. (A.R. at 7-9.)  The BIA subsequently confirmed that it agreed with the IJ's finding that Petitioner had filed a frivolous application. (A.R. at 2-3.)

## II. Jurisdiction and Standard of Review

We have jurisdiction to review a final order of removal pursuant to section 242(a) of the Immigration Nationality Act of 1952, as amended ("INA").  8 U.S.C. § 1252(a)(1) (1999).  This Court's jurisdiction over final orders of removal generally leads us to

review the decision of the BIA. However, in cases in which the BIA merely adopts the IJ's opinion, in whole or in part, we will review that IJ's decision. Chen Yun Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002). Our scope of review in this case is narrow – we will affirm any findings of fact supported by substantial evidence. See Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001). We are thus bound by the administrative findings of fact unless a reasonable adjudicator would be compelled to arrive at a contrary conclusion. 8 U.S.C. § 1254(b)(4)(B) (1999); Abdille, 242 F.3d at 483. However, "deference is not due where findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record, viewed as a whole." Balasubramanrim v. Ashcroft, 143 F.3d 157, 162 (3d Cir. 1998) (quoting Cordero-Trejo v. INS, 40 F.3d 482, 487 (1st Cir. 1994)). Finally, when questions of due process are raised regarding an immigration hearing, our review over such questions is plenary. E.g., Abdulrahman v. Ashcroft, 330 F.3d 587, 595-96 (3d Cir. 2003).

### III. Discussion

As a threshold matter, we first address the Government's contention that we are without subject matter jurisdiction to consider two of Petitioner's arguments on appeal. As stated above, we are empowered to review only final orders of removal. An order of removal becomes "final" upon a determination by the BIA, or the expiration of the time within which an alien may seek review from the BIA. 8 U.S.C. § 1101(a)(47)(B)(i)-(ii)

(1999).  Only those claims that are raised before the BIA can be argued on appeal so that "the agency responsible for construing and applying the immigration laws and implementing regulations . . . has had a full opportunity to consider a petitioner's claims before they are submitted for review by a federal court."  Theodoropoulos v. INS, 358 F.3d 162, 171 (2d Cir. 2004).

The Government submits first that, because the BIA expressly limited its adoption of the IJ's decision to findings related to Petitioner's credibility, the BIA did not address whether he adduced sufficient evidence to carry his burden of proof to show eligibility for asylum[2] and hence no final order has been issued on that point.  This argument ignores two crucial facts: (1) in his Notice of Appeal to the BIA, Petitioner submitted that the IJ erred in determining, *inter alia*, that he did not have a well-founded fear of persecution; and (2) the BIA adopted the decision of the IJ "insofar as the [IJ] found that the respondent failed to meet his burden to establish . . . his eligibility for the requested relief."  (A.R. at 59.)  From the language of these two sources, it is clear to us that Petitioner raised the issue of sufficiency of the evidence, and that the BIA considered it and adopted the IJ's view.  As we recently held, "[o]ur precedent is clear . . . that when the BIA simply adopts an IJ's decision, we must review the IJ's decision as the final agency decision."  Leia v. Ashcroft, 393 F.3d 427, 433 n.5 (3d Cir. 2005).  The IJ

_____

[2] Petitioner does not address denial of his applications for withholding of removal or protection under the Convention Against Torture.  These claims are therefore deemed to have been waived.  See, e.g., Yan Lan Wu v. Ashcroft, 393 F.3d 418, 423 n.6 (3d Cir. 2005).

7

concluded that there was insufficient evidence in the record to find that Petitioner had been a victim of past persecution or that he had a well-founded fear of future persecution. As the BIA adopted the IJ's decision with regard to evidence establishing his eligibility for relief, it is properly before us.

The Government also argues that the IJ's finding that Petitioner's asylum application was frivolous cannot be reviewed because Petitioner did not appeal the BIA's August 26, 2004, order to this Court. From our review of the record, it appears that the BIA rendered a decision implicitly affirming the IJ's finding of frivolousness on April 30, 2004. Petitioner requested clarification as to whether or not the decision spoke to the frivolousness finding, and the BIA *sua sponte* treated it as a motion for reconsideration on that point, affirming the IJ again on August 26, 2004. Despite this unusual procedural history, it is clear to us that the BIA was on notice of Petitioner's claim of error with regard to the frivolousness finding when he initially appealed the IJ's decision, and that it implicitly approved the IJ's conclusion: "[w]e find no merit to the respondent's contention that the [IJ] relied upon documents which were not included in the record to find that . . . the respondent had *fabricated part of his asylum claim*." (A.R. at 59) (emphasis added.) In arguing that the Petitioner must appeal the clarification/reconsideration, the Government here is truly extolling form over substance. The BIA had adequate notice and opportunity to address this point, and it appears it did so. If anything, it was the BIA's brief opinion affirming the IJ's decision that was the

8

cause of the confusion and hence the request for clarification. Petitioner's claim of error

with regard to the frivolousness finding is thus properly before us.

*A. The IJ did not abuse his discretion in refusing to admit uncertified documentary evidence, nor was there any use of the documents that violated due process.*

At the immigration hearing, the IJ refused to admit certain Albanian documents

that had not been certified pursuant to an immigration regulation which states, *inter alia*,

that an attested copy of a foreign record

> must be certified by an officer in the Foreign Service of the United States, stationed in the foreign country where the record is kept. This officer must certify the genuineness of the signature and the official position either of (i) the attesting officer; or (ii) any foreign officer whose certification of genuineness of signature and official position relates directly to the attestation or is in a chain of certificates of genuineness of signature and official position relating to the attestation.

8 C.F.R. § 287.6(b)(2) (2005). Despite Petitioner's argument to the contrary, the IJ did

not abuse his discretion when he refused to admit the documents. While we recognize

that "8 C.F.R. § 287.6 is not an absolute rule of exclusion, and is not the exclusive means

of authenticating records before an immigration judge," Gui Cun Liu v. Ashcroft, 372

F.3d 529, 532 (3d Cir. 2004), when an immigration petitioner is given the opportunity to

authenticate by other means and does not, the IJ does not abuse his discretion in refusing

to admit them. Liu, 372 F.3d at 533. At his initial hearing, Petitioner was instructed to

have the documents certified in preparation for a merits hearing. (A.R. at 138-39.) The

9

IJ informed him that he could either have the documents certified, or request new documents and have them certified prior to having them sent to the United States. (Id.) Petitioner did neither. At the merits hearing, the IJ was informed that the INS Forensic Document Laboratory could not authenticate any of the documents for a variety of reasons, (A.R. at 147-48; see also 206-7.), but there was no evidence presented suggesting that the Albanian government had in any way interfered with the certification process. Compare Liu, 372 F.3d at 533. Given the uncertainties hovering around these documents, and the Petitioner's failure to authenticate them in some way, we cannot say it was an abuse of discretion for the IJ to refuse to admit them.

Furthermore, the IJ and the Government did not use these documents in any way that infringed upon the Petitioner's due process rights. As to the IJ, Petitioner argues that he relied upon these documents in support of his adverse credibility determination. However, the IJ expressly stated twice that he had not considered the documents with regard to his credibility determination (A.R. at 125-26, 128), and there is no indication that he acted in any way contrary to that statement. His decision was based only on admitted evidence, namely Petitioner's asylum application and hearing testimony. The Government's reference to the inadmissible documents similarly was not a due process violation. In response to Petitioner's objection to such use, the IJ made clear that the Government could explore only discrepancies between the hearing testimony and what was stated in the documents. Just as a witness in a criminal trial can be confronted with

10

otherwise inadmissible hearsay to impeach his trial testimony, so here could Petitioner be confronted with discrepancies between his testimony and the documents he offered to the immigration court. This goes to Petitioner's credibility, not the contents of the documents. Moreover, Petitioner was given an opportunity on redirect to explain any credibility issues that were exposed by the Government's use of the documents. There is no indication that Petitioner was denied the ability to make arguments on his behalf, see Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001), and it is not fundamentally unfair to question Petitioner about documents which he himself offered into evidence. Therefore, no due process violation here lies.

*B. The IJ's adverse credibility finding is supported by substantial evidence.*

The BIA adopted the IJ's conclusion that Petitioner was not credible. This determination was based on six specific factual grounds. We review such determination for substantial evidence, a standard of review that is extremely deferential and sets "a high hurdle by permitting the reversal of factual findings only when the record evidence would compel . . . a reasonable factfinder to make a contrary determination." Abdulrahman, 330 F.3d at 597 (internal quotation marks omitted). We are required to sustain an adverse credibility determination "unless ... no reasonable person" would have found the applicant incredible. He Chun Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004).

11

The IJ cited several reasons why he found Petitioner's testimony to be incredible. We need only address those inconsistencies that are the most severe, since whether we would reject some of the IJ's weaker grounds for an adverse credibility finding is irrelevant – so long as one of the identified grounds is supported by substantial evidence and goes to the heart of Petitioner's claim of persecution, we are bound to accept the IJ's adverse credibility finding. Wang v. INS, 352 F.3d 1250, 1259 (9th Cir. 2003) (citing Hakeem v. INS, 273 F.3d 812, 816 (9th Cir. 2001)).

First, the IJ found incredible Petitioner's allegation that he was beaten for several hours but did not require hospitalization and was able to treat himself with home remedies. (A.R. at 124.) On appeal, Petitioner points to no rebuttal evidence aside from his belief that he would have been harmed further had he gone to a hospital. No medical records or other evidence was presented corroborating that he ever sustained any injuries. This was insufficient to meet his burden to produce evidence compelling a contrary finding. Second, the IJ stated that it was unbelievable that Petitioner was arrested as a co-conspirator in a coup d'état, only to then receive a passport seven days later. (A.R. at 124-25.) Petitioner changed his story during questioning with regard to his passport, first suggesting that those who issued the passport were not aware of his arrest but, when confronted on cross-examination with evidence that the Prefecture of Police in his home town had signed his passport, then suggested that his passport was approved because it was a mere identification document. (A.R. at 181.) The IJ was justified in not believing

12

Petitioner's version of what had occurred, given that his explanation changed during the course of testimony. See Harbi v. INS, 242 F.3d 882, 889-90 (9th Cir. 2001) (upholding credibility finding based on applicant's "propensity to change his story regarding incidents of past persecution"). At most, this demonstrates that Petitioner was simply guessing as to why his passport was issued – certainly not sufficient evidence to meet his burden of proof on appeal. Third, the IJ did not believe Petitioner's assertion that he was instructed to testify falsely against his brother and others who were accused of treason, and that he would himself be in danger if he did not do so. Petitioner had previously testified that he was not a prominent member of the Democratic Party, and his brother, who was a more active member, was able to live in Albania undisturbed. When asked why he would be a target but his brother was not, Petitioner replied that, because of the underlying conflict between his party and the Communists, he *believed* he would be mistreated if returned to Albania. (A.R. at 177.) This belief is insufficient evidence to compel reversal of the IJ's credibility finding. Finally, the IJ could not reconcile Petitioner's testimony that he went into hiding after receiving a court summons with the fact that he went on a business trip to Greece a few days later. When pressed on cross-examination, Petitioner's description of the trip changed as the government pointed out the improbabilities in his story. While it is not in dispute that Petitioner traveled to Greece for several days in 2000, the ease in which he left and reentered Albania gave the IJ pause. This, when coupled with Petitioner's changing story with regard to the purpose

13

of the trip, cannot be overcome by merely arguing that "he did not think customs officials would know that the police were looking for him."  Brief of Petitioner at 16.

For these reasons, we cannot say that there is evidence compelling an alternative credibility determination.  Therefore, Petitioner has not established that he was the victim of past persecution or that he had a well-founded fear of future persecution.

*C. The IJ improperly determined that Petitioner had filed a frivolous asylum application.*

Where Petitioner does gain some ground is with regard to the IJ's determination that he filed a frivolous asylum application.[3]  We review the factual determination of the IJ that the material elements of Petitioner's application were deliberately fabricated under the substantial evidence standard.  See 8 U.S.C. § 1252(b)(4) (2000).  However, the conclusion that an asylum application is frivolous is a legal one, which we review *de novo*.  Barreto-Claro v. U.S. Atty. Gen., 275 F.3d 1334, 1338 (11th Cir. 2001).

As we recently held, a finding of frivolousness does not flow automatically from an adverse credibility determination.  Muhanna v. Gonzales, 399 F.3d 582, 589 (3d Cir. 2005).  Indeed, the applicable regulation requires a specific finding that (1) some material aspect of the alien's claim was false; (2) the alien knew, at the time of filing, that this material aspect of his claim was untrue; and (3) the alien, after a sufficient opportunity to do so, failed to satisfy the IJ that any discrepancies or implausibilities were not the result

---

[3] Because the BIA summarily adopted the IJ's frivolousness finding, we review the IJ's decision directly on this point.

of deliberate fabrication. See 8 C.F.R. § 208.20 (2005).

The IJ essentially held that, because Petitioner's testimony did not make sense and because the documents he submitted could have been fabricated, he was *ipso facto* guilty of filing a frivolous application. Nowhere did the IJ or the BIA make a specific finding that Petitioner made a deliberately false statement. Rather, both assumed that incredible testimony plus party membership cards that were *possibly falsified* equaled a fraudulent application. This was insufficient. The IJ should have pointed to specific acts by the Petitioner, explained why they were material to his asylum claim, and explained why Petitioner's excuses did not rebut an inference of fraud. The IJ made no finding that the documents were actually fraudulent, how Petitioner's inconsistencies rose to the level of knowing falsehood, nor why Petitioner's explications were insufficient. Without such findings, it is far too easy to conclude, as was done here, that an applicant deemed incredible also intentionally attempted to defraud the immigration court. As the BIA noted, it should be "loathe to quickly attach a label of frivolousness . . . to an applicant's . . . exercise of his legal rights." (A.R. at 02-03 (quoting Matter of Cheung, 16 I. & N. Dec. 244 (BIA 1977).) Finding that an asylum application is frivolous is a delicate matter with severe consequences for the applicant, and should thus be used as a scalpel, not as a club. We therefore disagree with the BIA's ruling on this point.

15

## IV. Conclusion

We conclude that substantial evidence supports the BIA's adverse credibility determination, that the IJ was correct in refusing to admit uncertified, unauthenticated documents into the administrative record, and that reference to such excluded documents for impeachment purposes only was not a due process violation.  Therefore, we must affirm the BIA's order of removal.  However, because the BIA assumed Petitioner's application was fraudulent without making the necessary factual findings, we grant the Petition for Review on this point only.