

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-16-2007

# Sesiashvili v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4939

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Sesiashvili v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1461.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1461

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4939

———

DAVID SESIASHVILI,

Petitioner

v.

ALBERTO GONZALES, UNITED STATES ATTORNEY GENERAL,

Respondent

———

On Petition for Review from a Final Order of the
Board of Immigration Appeals
(Agency No. A78-818-264)
Immigration Judge: Miriam K. Mills

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 6, 2007

Before: SLOVITER and AMBRO, Circuit Judges,
and THOMPSON*, District Judge

(Filed  March 16, 2007)

———

*Honorable Anne E. Thompson, United States District Judge for the District of New
Jersey, sitting by designation.

OPINION

THOMPSON, District Judge.

David Sesiashvili petitions for review of an order of the Board of Immigration Appeals ("BIA"), which adopted and affirmed an Immigration Judge's ("IJ") order denying his application for asylum and withholding of removal pursuant to the Immigration and Nationality Act ("INA"), and for protection under the Convention Against Torture ("CAT"). We have jurisdiction to review the BIA's decision pursuant to 8 U.S.C. § 1252(a)(1). Where, as here, the BIA has not written its own opinion but rather has deferred to or adopted the opinion of an IJ, we review the decision of the IJ as the final agency decision. Leia v. Ashcroft, 393 F.3d 427, 433 n.5 (3d Cir. 2005); Dia v. Ashcroft, 353 F.3d 228, 243 (3d Cir. 2003) (en banc). For the reasons stated below, we will deny the petition for review.

**I.**

David Sesiashvili is a native and citizen of the Republic of Georgia, admitted to the United States on July 8, 1998, as a non-immigrant visitor authorized to remain until January 7, 1999. After landing in Newark, New Jersey, he was to purchase a plane ticket to attend a karate seminar in Northbridge, California. Instead, as Petitioner's father had

fallen ill, Petitioner went to his father's house[1] to care for him, and remained in the United States past January 7, 1999. Petitioner's parents are currently in the United States seeking asylum.

In October 2001, Petitioner was arrested by the Immigration and Naturalization Service ("INS") for remaining in the United States after his visa expired, and was detained in York, Pennsylvania. On December 3, 2001, the INS placed Petitioner in removal proceedings by serving him with a Notice to Appear ("NTA"). At an initial hearing, Petitioner admitted removability and stated his intent to file an application for relief in the form of asylum, withholding of removal, protection under the CAT, and in the alternative, voluntary departure. On April 22, 2003, Petitioner filed his application.

Petitioner claims that while in York, Pennsylvania, after his arrest, he cooperated with the FBI, providing them with information regarding Georgian drug dealers, and helping them to understand "trick language" used by the drug dealers in conversations taped by the FBI. In return, Petitioner claims, the agents promised to testify on his behalf at his immigration court hearings. At some point, however, Petitioner believed the agents reneged on their promises to help him, so he stopped providing them with information. Petitioner claims that if he returns to Georgia he faces mortal danger from criminals involved with the Georgian drug dealers he exposed to the FBI. Petitioner claims that he

---

[1]     Presumably, Petitioner's father's house is in the northeastern United States, but Petitioner never specifies its location.

and his family are considered FBI agents or spies by those living in his hometown in Georgia, and that the Georgian KGB has contacted Petitioner's friends asking about his informant activities. Petitioner further claims a well-founded fear of torture due to the fact that, in 1995, the Georgian KGB accused his father of being a spy because he was a sailor who traveled the world, and threatened to torture him and his family unless he ceased his work as a sailor and ended his affiliation with the National Democratic Party.

At the June 7, 2004 hearing, Petitioner could not corroborate his alleged involvement with the FBI, and he could not state the exact date, or even the year, of his cooperation. Petitioner also could not produce any proof from the agents he assisted, because, he claimed, the agents disavowed his involvement due to his refusal to continue providing them with information. While Petitioner claimed his parents knew of the country conditions in Georgia and that he had cooperated with the FBI, he did not present them at the hearing because he did not want them to hear details about his cooperation and past criminal convictions. Moreover, even though Petitioner claimed that his cooperation resulted in well-publicized investigations and trials, he did not submit any information or articles regarding those cases.

Following the hearing, the IJ commented that Petitioner failed to articulate any date on which he learned that individuals in Georgia who would retaliate knew of his alleged informant activities. Thus, the IJ found that Petitioner had failed to establish that he filed for asylum relief within a reasonable time, even assuming the truth of these

4

alleged changed material circumstances. Similarly, because Petitioner was unable to offer any corroborating evidence of his cooperation with the FBI and informant activities, the IJ found that Petitioner failed to establish a basis for his withholding of removal and CAT protection claims. Finally, despite Petitioner's assertion that the Georgian government would not protect him from retaliation due to its corruption, the IJ found that evidence of improvement in Georgia's human rights record and Georgia's alliance with the United States undermined those assertions. Therefore, the IJ found Petitioner's asylum application to be untimely filed, denied his requests for withholding of removal and CAT protection, and ordered him deported to Georgia. On October 12, 2005, the BIA affirmed, without an opinion, the results of the IJ's decision.

## II.

Petitioner contends on appeal that the IJ erred in finding his asylum application to be time-barred, and further argues that the IJ erred in denying his withholding of removal and CAT protection claims because she: (1) found Petitioner incredible due to his previous convictions and ties to drug dealers, ties which Petitioner created in order to assist the FBI; (2) drew adverse inferences from the fact that Petitioner's parents did not testify even though their testimony would have been unhelpful; and (3) relied on an alliance between the United States and Georgia that is unrelated to the Georgian government's ability to protect Petitioner from retaliatory figures.

As an initial matter, the Court notes that it does not have jurisdiction to review the

5

denial of Petitioner's asylum application because the IJ determined Petitioner failed to establish either changed circumstances qualifying him for an exception to the one-year filing requirement, or that he filed his application within a reasonable time even assuming the existence of changed circumstances. See 8 U.S.C. § 1158(a); Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006). The Court does have jurisdiction, however, to review the denial of Petitioner's claim for withholding of removal and relief under the CAT.

Where, as here, the BIA summarily affirms an IJ's decision, the Court reviews the IJ's decision itself. Dia, 353 F.3d at 245. The IJ's decision should be upheld if it was supported by "reasonable, substantial and probative evidence on the record considered as a whole" and overturned where the evidence "is so compelling that no reasonable factfinder could conclude" as the IJ had. Mulanga v. Ashcroft, 349 F.3d 123, 131 (3d Cir. 2003) (citations omitted). Under this standard, the IJ's finding must be upheld unless "the evidence not only supports" a contrary conclusion, "but compels it." INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992).

For withholding of removal under 8 U.S.C. § 1231(b)(3)(A), an alien must demonstrate "a clear probability" of persecution. Chang v. INS, 119 F.3d 1055, 1066 (3d Cir. 1997). An alien must show it is "more likely than not" that because of "race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1231(b)(3)(A), he will be subjected to "threats to life, confinement, torture, and

6

economic restrictions so severe that they constitute a threat to life or freedom." Li Wu Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2001); Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). For relief under the CAT, an alien must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." August v. Ridge, 395 F.3d 123, 151 (3d Cir. 2005).

The Court concludes that reasonable, substantial, and probative evidence on the record supports the IJ's determination that Petitioner did not establish a clear probability of persecution sufficient to support withholding of removal. The Court acknowledges Petitioner's argument that he is "between a rock and a hard place" because the more he discloses in his removal proceedings about his informant activities, the more he subjects himself to possible retaliation upon deportation. (Pet.'s Reply Br. at 3.) Still, the Court disagrees that beyond Petitioner's own testimony, "no further proof should be required." (Id.) Petitioner could not recall even the year of his cooperation with the FBI, nor did he provide any corroborating evidence of his participation. Further, Petitioner provided no evidence regarding when or how the individuals he fears learned of his alleged cooperation. Finally, Petitioner offered no evidence to support his assertion that the Georgian government would be unable or unwilling to control his would-be attackers. Thus, there is no evidence within the record that compels a conclusion contrary to the IJ's that Petitioner did not satisfy his burden of proving a clear probability of persecution.

Further, the Court will uphold the IJ's denial of Petitioner's claim under the CAT.

7

The alleged threats made by Georgian criminals in 1995 to Petitioner's father upon their suspicion that he was a spy and involved with the National Democratic Party do not show that Petitioner will, more likely than not, be tortured upon his return to Georgia for his alleged assistance to the FBI in identifying drug dealers. Thus, there is no evidence in the record compelling the conclusion that Petitioner is eligible for protection under the CAT. August, 395 F.3d at 151.

## III.

Based upon the record in this case, we conclude that Petitioner has not established a clear probability of persecution or torture, and that the IJ's decision is supported by substantial evidence. Accordingly, we will affirm the BIA's decision.

For the foregoing reasons, the petition for review will be denied.