

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-2-2005

# Tjhin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4710

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Tjhin v. Atty Gen USA" (2005). *2005 Decisions*. Paper 1488.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1488

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____

No: 03-4710
_____


FEN LIE TJHIN,
Petitioner

v.

*ALBERTO R. GONZALES, ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

(*Substituted pursuant to Rule 43c), F.R.A.P.)
\_\_\_\_\_


Petition for Review of an Order
of the Board of Immigration Appeals
(A79-318-035)
\_\_\_\_\_


Submitted Under Third Circuit LAR 34.1(a)
February 17, 2005

Before: SLOVITER, AMBRO, and ALDISERT, Circuit Judges.

(Filed: March 2, 2005)
\_\_\_\_\_


OPINION
\_\_\_\_\_

SLOVITER, Circuit Judge.

Fen Lie Tjhin (Tjhin), a native and citizen of Indonesia, seeks review of a final order of the Board of Immigration Appeals (BIA) dated December 2, 2003, which summarily affirmed the decision of the Immigration Judge (IJ) denying Tjhin asylum, withholding of removal, and relief under Article 3 of the Convention Against Torture (CAT).

## I.

Tjhin entered the United States on August 11, 2000 as a non-immigrant visitor with authorization to remain until September 10, 2000. He remained longer than permitted and on July 2, 2001, the former Immigration and Naturalization Service (INS) filed a Notice to Appear in immigration court. On May 7, 2001, Tjhin sought relief from removal and submitted applications for asylum, withholding of removal, as well as relief under the CAT. On August 15, 2001, he had a hearing before the IJ where he conceded removability. See Immigration and Nationality Act (INA) § 237(a)(1)(B); 8 U.S.C. § 1227(a)(1)(B). After this initial hearing, the IJ began proceedings on the merits of Tjhin's claim. On June 13, 2002, the IJ denied his application for asylum, withholding of removal, and relief under the CAT. Tjhin then appealed to the BIA which summarily affirmed the IJ's decision.

Tjhin grounds his application for asylum and relief on the alleged persecution he faced due to his Chinese Catholic minority status in Indonesia and the harassment he

2

experienced in school because of his Chinese ethnicity, which continued at college in Jakarta. Tjhin focuses on three events as evidence of past persecution.

The first occurred during the anti-Christian riots in May 1998 by native Indonesian Muslims against Chinese persons and their property. Tjhin, riding through a crowd on his bike, was hit with stones and pieces of wood by persons he believes were local Indonesians who targeted him because he was Chinese, and who exclaimed, "Kill him." (App. at 12).

The second event was the robbery of his brother's home a few days later by assailants who brandished a knife and pushed his brother against a wall, thereby injuring his head. Tjhin recognized some of the robbers as his Indonesian neighbors and felt he was being targeted because of his ethnicity.

The third incident of alleged persecution occurred in January of 2000 when Tjhin, riding his bike in the rain, accidently bumped a group of native Indonesian Muslims who, although unhurt, assaulted him allegedly because he is Chinese. He did not file a police report for any of the assaults but he felt unsafe in Indonesia.

Tjhin also claims that he had been the subject of further abuse while in Indonesia because of his Catholicism. Stones were thrown at him in Jakarta on his way to church, a church that had been bombed on several occasions by, he believed, Islamic terrorists.

There was some discrepancy about whether he is a practicing Catholic or merely learning about the faith. Upon further questioning, Tjhin explained that he has not had

3

enough time while in Indonesia or in the United States to actually become Catholic or be baptized and is actually just studying the religion. There is also some inconsistency regarding where he lived during the time he filed his asylum application. At his hearing, Tjhin testified that during 2001, he lived and worked in New York. However, his asylum application indicated that his address, at that time, was in Philadelphia. Tjhin reasoned that he only considered New York to be a place where he worked, but he felt Philadelphia was his residence because that is where his friends resided. His attorney, who filed the application, was unaware that he actually lived and worked in New York at the time.

At the hearing before the IJ, Tjhin testified that he spoke with relatives in Indonesia who told him that nothing has changed regarding the level of violence. Thus, Tjhin feels he would experience the same hostility for being Chinese if he returned. The IJ found that Tjhin was not credible and, in the alternative, had failed to meet his burden of proof and persuasion that he was persecuted for being ethnically Chinese and/or Catholic. Tjhin appealed the IJ's decision to the Board, which summarily affirmed. Tjhin has filed a timely petition for review.

**II**.

Because the Board did not issue a separate order but merely adopted the opinion of the IJ, we must review the decision of the IJ. Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). We have jurisdiction to review the Board's final order of removal pursuant to 8 U.S.C. § 1252(a)(1) and 28 U.S.C. § 2342. We review to determine

4

whether the Board has substantial evidence to support its decision. Under the deferential standard of substantial evidence, "the BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001) (citing INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992)).

Tjhin's brief fails to challenge the IJ's determination for withholding of removal and relief under CAT. In any event, because the standard for those claims is higher than for asylum, Tjhin would not qualify for them if his asylum claim fails. Abdulrahman v. Ashcroft, 330 F.3d 587, 591 n.2 (3d Cir. 2003) (citing 8 C.F.R. § 208.16(c)(2) & (4)). To establish an asylum claim under INA § 208(a), 8 U.S.C. § 1158(a), a petitioner must show that he qualifies as a refugee. A "refugee" is defined as an individual who is outside of one's country of nationality and "unable or unwilling to return to, . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

Tjhin bears the burden of supporting his asylum claim through credible evidence. Abdille, 242 F.3d at 482. The IJ found that Tjhin's testimony regarding the persecution that he experienced as a result of his Chinese ethnicity and practice of the Catholic religion was not credible and, thus denied his application for asylum.

The IJ referred to four principal discrepancies in Tjhin's claims: (1) Tjhin's vehement assertion that he was robbed on Saturday, May 15, 1998, three days after the

5

riots, which began on Thursday, May 13, 1998, whereas, as the IJ noted, May 15, 1998 was a Friday; (2) Tjhin supplied a false Philadelphia address on his asylum application when he had been living and working in New York. (3) Tjhin indicated that he was Catholic on his application, but testified that he has not had enough time to study the Catholic faith and consequently has not become Catholic or been baptized. Regardless, the IJ found that absent corroborating evidence, Tjhin did not meet his burden of proof and persuasion that he is at least studying toward becoming a Catholic and is associated with a Catholic church either in the United States or in Indonesia. (4) The IJ found that he did not submit any evidence that bolstered the Court's confidence that he is ethnically Chinese.

### III.

We believe that the first credibility factor noted by the IJ, regarding whether the burglary of his brother's home occurred on a Friday or a Saturday, is a minor discrepancy of days and should have no bearing on Tjhin's credibility. Leia v. Ashcroft, 393 F.3d 427, 436 (3d Cir. 2005). This factor does not go to the heart of Tjhin's claim. Similarly, Tjhin's use of a false address also does not go to the core of his asylum claim. However, it does speak to whether or not Tjhin testified truthfully and raises doubt as to the reliability of Tjhin's testimony.

It is more relevant that Tjhin was unable to show his involvement in the Catholic church in the United States, Jakarta or Bangka, although part of Tjhin's asylum claim is

6

based on alleged persecution faced due to his Catholic faith. He provided no affidavits from any fellow churchgoer and explained that he has not had sufficient time to study Catholicism in order to accept the faith. Tjhin's own statements discount a claim of persecution on account of his religion, an issue he did not address in his brief.

Moreover, Tjhin provided no corroborating evidence that he is ethnically Chinese, an issue on which the IJ focused. It is not unreasonable to expect such evidence in light of the previous inconsistencies, Abdulai, 239 F.3d at 554, but Tjhin did not address his failure to provide supporting evidence of his Chinese heritage.

Tjhin's only evidence was his own testimony and Indonesia's Country Reports on Human Rights Practices for 2000 that corroborated Tjhin's claim that "anti-Chinese sentiment [that] led to serious and widespread attacks on Chinese-owned businesses" in 1998. (App. at 35) However, there was no evidence of the attacks he personally faced, whether through police reports or affidavits from family members. More importantly, the assaults to which he testified do not amount to persecution, which we have held includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom . . . [but] does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). In addition, the concept of "persecution" involves either government involvement or the involvement of individuals the government is "unable or unwilling" to control. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

7

Tjhin's claim that he was hit with stones and pieces of wood, even the mob's shouts of "Kill him"and the brandishing of a knife by assailants who pushed his brother against a wall, do not rise to the level of persecution. Thus, Tjhin failed to meet his burden of proof and persuasion that he experienced past persecution due to his race and that he would be subject to persecution on account of his ethnicity if he were returned to Indonesia. In fact, in January of 2000, Tjhin traveled to Singapore and then voluntarily returned to Indonesia. Moreover, the government was able to show that the country conditions have changed, rebutting any possible presumption of future persecution. Lukwago v. Ashcroft, 329 F.3d 157, 174 (3d Cir. 2003)

## IV.

For the reasons set forth, we will deny the petition for review.