OPINION OF THE COURT
CHAGARES, Circuit Judge.
Tasim Makashi petitions for review of a final order of removal issued by the Board of Immigration Appeals (“BIA”). The BIA affirmed the decision of the Immigration Judge (“IJ”) denying Makashi’s petition for asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”). We will deny his petition for review.
I.
Because we write solely for the parties, we will only briefly summarize the essential facts. Makashi, a native of Albania, seeks asylum and withholding of removal based on past political persecution and fear of future persecution, as well as relief under the Convention Against Torture (“CAT”). He claims that while still in Albania, he was persecuted because of his political beliefs — his membership in and *278 support of the Democratic Party.[1] He relies heavily on an incident that allegedly occurred on September 14, 1998, in which explosives were detonated within Maka-shi’s home, damaging it as well as causing him serious injuries. He does not know who planted the explosives. As corroborating evidence of the explosion, Makashi submitted a report from Dr. Alfred Tusha, which references an explosion on September 14, 1998, but states that Makashi was examined on October 8, 1998. Makashi also argues that Vili Minarolli, a leader in the Democratic Party, was aware of the bombing, but a letter submitted by him does not reference it. Appendix (App.) 425. Makashi left Albania in 2002 and fled to the United States, where he applied for asylum, withholding of removal, and relief under the CAT.
The Immigration Judge (“IJ”) denied Makashi’s claim, finding that he was not credible. In making this finding, the IJ relied on numerous pieces of evidence: (1) Dr. Tusha’s report states that Makashi was examined October 8, not in September, and there was no further corroborating evidence about his beatings; (2) Minar-olli’s letter, which did not reference the bombing, was unpersuasive; and (3) the Country Condition Reports showed that there was generalized violence in Albania in the late 1990’s, and the explosion could have been just an instance of generalized violence rather than political persecution. In the alternative, the IJ concluded that even if Makashi was credible, his claim should be denied based on changed country conditions. Finally, the IJ found no basis to grant Makashi relief under the CAT.
The BIA affirmed the IJ’s decision, concluding that the IJ’s determination that Makashi was not credible was not clearly erroneous, because the discrepancy between Dr. Tusha’s report and Makashi’s claim of when the explosion occurred was “substantial and central” to Makashi’s claims. App. 2. The BIA also affirmed the IJ’s alternative finding that even if Makashi was credible, and had established past persecution, he was still ineligible for relief because the presumption of a well-founded fear of future persecution had been rebutted due to changed country conditions in Albania. The BIA also affirmed the IJ’s decision not to grant Makashi relief under the CAT because he did not demonstrate that it was more likely than not that he would be tortured if returned to Albania. Makashi then filed a petition for review in this Court.
II.
The BIA had authority to review Maka-shi’s appeal under 8 C.F.R. § 1003.1. This Court has jurisdiction to review the BIA’s final orders of removal under 8 U.S.C. § 1252. “[W]e uphold the BIA’s factual determinations if they are ‘supported by reasonable, substantial, and probative evidence on the record considered as a whole.’.... [W]e can reject the BIA’s factual findings only if ‘any reasonable adjudicator would be compelled to conclude to the contrary.’ ” Liu v. Attorney General, 555 F.3d 145, 148 (3d Cir.2009). An adverse credibility determination is a factual finding which we review under the substantial evidence standard. Lin-Zheng v. Attorney General, 557 F.3d 147, 155 (3d *279 Cir.2009). When the BIA “substantially relie[s]” on the IJ’s credibility finding, even though it only gives “some examples of ... inconsistencies,” we can review the decision of both the IJ and the BIA. Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir.2004); See also Sandie v. Attorney General, 562 F.3d 246, 250 (3d Cir.2009).
III.
The Attorney General may grant asylum or withholding of removal to an alien in removal proceedings if the alien establishes that he or she is a “refugee” under the Immigration and Nationality Act (INA). 8 U.S.C. §§ 1158(a) and (b), 1231(b)(3)(A); Lin-Zheng, 557 F.3d at 149 n. 1; Wong v. Attorney General, 539 F.3d 225, 232 (3d Cir.2008). Under the INA, a “refugee” is defined as “ ‘any person who is outside any country of such person’s nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....’” Wong, 539 F.3d at 232 (citing 8 U.S.C. § 1101(a)(42)(A)).
To establish asylum eligibility, a petitioner can demonstrate that he suffered from past persecution, and, if he does so, that “gives rise to a rebuttable presumption of a well-founded fear of future persecution.” Gomez-Zuluaga v. Attorney General, 527 F.3d 330, 341 (3d Cir.2008) (citation and internal quotation marks omitted). Even if an asylum applicant does not show that he suffered from past persecution, he
may still qualify for asylum if he shows that he has a well-founded fear of future persecution on account of a protected ground. A well-founded fear includes both a subjective and objective component. An applicant must show that he has a subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility.
Shardar v. Attorney General, 503 F.3d 308, 313 (3d Cir.2007) (citations and internal quotation marks omitted).
To establish eligibility for withholding of removal, “a petitioner must ‘establish a clear probability,’ meaning ‘that it is more likely than not, that he/she would suffer persecution.’ ” Wong, 539 F.3d at 236 (citation omitted). If an applicant is ineligible for asylum, he is also ineligible for withholding of removal. Id. at 236-37. To establish eligibility under the CAT, an applicant must show that it is “more likely than not that [he] will be tortured if removed ..., and that such torture will occur with the consent or acquiescence of the government.” Gomez-Zuluaga, 527 F.3d at 349.
Makashi contends that the IJ erred when it based its adverse credibility finding on the discrepancy between when Makashi claims the explosion happened (September 14, 1998) and the date of his doctor’s note (October 8, 1998), because this is a minor inconsistency which does not go to the heart of his asylum claim. He argues that the rest of Dr. Tusha’s report corroborates his claim in that it mentions that there was an explosion at Makashi’s home, that he suffered injuries from it, and that he was hospitalized for 48 hours on account of it. See App. 263. He notes that the IJ erred when it stated that no family members had corroborated his report of the explosion, because his mother had sent a letter about it. See App. 257. He also claims that the IJ based its adverse credibility finding on impermissible speculation, because the IJ stated that who was responsible for the bombing was unknown.
*280 “[M]inor inconsistencies and minor admissions that reveal nothing about an asylum applicant’s fear for his safety are not an adequate basis for an adverse credibility finding. Rather, the discrepancies must involve the heart of the asylum claim.” Caushi v. Attorney General, 436 F.3d 220, 229 (3d Cir.2006) (citations brackets and internal quotation marks omitted).[2] Because the BIA substantially relied on the IJ’s adverse credibility finding, we can look to both the BIA’s and IJ’s opinions here, and we find that the adverse credibility finding was based on substantial evidence. Xie, 359 F.3d at 242.
The IJ determined that Makashi was not credible for a myriad of reasons, not only because the date on Dr. Tusha’s report differed from the date of the alleged explosion. For example, the IJ found it important that Makashi had not submitted any corroborating evidence, including medical evidence, of other beatings Makashi said he endured, and that the letter from Minarolli failed to state anything about the bombing or the beatings.[3] The BIA, in turn, found that the difference in the date that Dr. Tusha’s report states Makashi was examined and the date Makashi alleges the explosion happened, was an example of a substantial discrepancy found by the IJ. While the IJ did err in stating that no corroborating evidence had been submitted by family members, as Makashi’s mother had submitted a letter regarding the explosion, we are nevertheless not “compelled” by these findings to reach a contrary credibility determination here. We conclude that the decisions below were supported by substantial evidence, and that based on the adverse credibility finding, Makashi failed to establish past persecution.
However, even if the adverse credibility findings were not supported by substantial evidence, we would still deny Makashi relief, as we agree with both the BIA and the IJ that changed country conditions in Albania constitute a “fundamental change in circumstances” that rebut any presumption that Makashi has a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(1)© (even if past persecution has been established, asylum can still be denied if “[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant’s country of nationality ... on account of ... political opinion.”); Leia v. Ashcroft, 393 F.3d 427, 437 (3d Cir.2005) (“[E]vidence of changed country conditions can only rebut an alien’s fear of future persecution based on past persecution if the evidence addresses ‘the specific basis for the alien’s fear of persecution; generalized improvements in country conditions will not suffice -’ ”). The BIA relied on the 2005 State Department Report for Albania (the “Report”) in concluding that even if Maka-shi had established past persecution, the presumption of future persecution had been rebutted. Based on the Report, the BIA found that the Democratic Party was one of the two largest parties in Albania, with many seats in Parliament, that there *281 were periodic elections, and that the government “generally respected” citizens’ rights of assembly and association. App. 3. There was nothing in the Report which specifically mentioned violence against Democratic Party members, and there were “no confirmed cases” of prisoners held solely for political reasons. App. 3. The BIA also explained that while there were problems with “general human rights abuses” in Albania, nothing indicated that abuses were perpetrated specifically on account of political party membership. App. 3. It therefore concluded that Makashi had not established a well-founded fear of persecution. A review of the 2005 State Department Report does not compel a contrary conclusion. We therefore agree with the BIA’s conclusion that Makashi is not entitled to asylum, and as a necessary corollary, is not entitled to withholding of removal.
Finally, neither the BIA nor the IJ erred when they found that Makashi had not established a basis for relief under the CAT, as Makashi did not demonstrate that it is more likely than not that he would be tortured if returned to Albania.
IV.
Accordingly, we will deny Makashi’s petition for review.

. Makashi also alleges that while the Communist Party was in power, he and his family were held in an internment camp from 1967-1991. While the Socialist Party was in power in 1998, Makashi alleges that he was once again mistreated: he was fired from his job, and he was questioned about his membership in the Democratic Party and beaten and held by the police. He also alleges that he attended a political rally in October of 2000, and that while he was coming home from that event, he was detained and beaten.

. The REAL ID Act of 2005, which changed the standard for credibility determinations, is not applicable to claims, such as Makashi’s, which were made before the effective date of the Act. Chen v. Gonzales, 434 F.3d 212, 216 n. 2 (3d Cir.2005).

. Although Makashi argues that this letter was offered to show his membership in the Democratic Party, and not to "tell of [his] personal acts of suffering," we find that the IJ's conclusion that the letter could have been more detailed about Makashi’s personal incidents of harm as a result of his membership in the Democratic Party was supported by substantial evidence.