**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2083
_____

DIPTIBEN DIPAKKUMAR PATEL;
DIPAKKUMAR DASHARATHLAL PATEL; S.D.P.,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency Case Nos. A240-075-093, A240-046-727, A240-075-094)
Immigration Judge: Steven Mannion
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 16, 2025
_____

Before: SHWARTZ, MATEY, and FREEMAN, *Circuit Judges*

(Filed: July 22, 2025)
_____

OPINION*
_____

---

*This disposition is not an opinion of the full Court and, under I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Petitioners Diptiben Dipakkumar Patel, her husband Dipakkumar Dasharathlal Patel, and their minor son S.D.P. seek review of the Board of Immigration Appeals (BIA)'s denial of their claims for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Seeing no error, we will deny the petition.

## I.

Petitioners are natives and citizens of India. In 2016, while residing in Kalol, Gujarat, Ms. Patel put up posters and banners before political rallies for the Congress Party. In 2017, four men confronted her and urged her to join the rival Bharatiya Janata Party (BJP). When she refused, the men told her to "think about it, or something untoward may result." A.R. 62. Two years later, six men wearing BJP shirts on bikes bearing BJP stickers approached Ms. Patel after she had been campaigning for the Congress Party. They also told her to join the BJP. When Ms. Patel refused, one of the men pushed her to the ground and three others began kicking and punching her. "[O]ne of the men said that they will kill her and her entire family." A.R. 62. In 2021, five men stopped Ms. Patel at the market. "They said that she was very active and worked for the Congress party during the election" and "told her it was time to bear the fruits of being against BJP." A.R. 63. Two of the men, who were carrying sticks, beat Ms. Patel.[1]

Petitioners entered the United States on February 6, 2022. The Immigration Judge (IJ) denied their applications for asylum, withholding of removal, and protection under

---

[1] Ms. Patel did not submit medical records corroborating this incident.

CAT. While the IJ found Ms. Patel largely credible, he found it incredible that she was singled out for her low-level work within the Congress Party. The BIA dismissed the Petitioners' appeal.[2]

**II.**

To qualify for asylum, an alien must establish that she is a "refugee," 8 U.S.C. § 1158(b)(1)(A), meaning she is "unable or unwilling to return to . . . [her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)(A). "Persecution 'connotes extreme behavior, including threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 434 (3d Cir. 2023) (quoting *Ahmed v. Ashcroft*, 341 F.3d 214, 217 (3d Cir. 2003)). But "[p]ersecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684 (3d Cir. 2015) (quoting *Fatin v. Immigr. & Naturalization Serv.*, 12 F.3d 1233, 1240 (3d Cir. 1993)).

---

[2] The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1(b)(3) and (9), and we have jurisdiction under 8 U.S.C. § 1252(a)(1) over final orders of removal. "Where the BIA affirms the decision of the IJ and 'set[s] forth somewhat its own rationale and analysis,' we review both the BIA's and the IJ's decisions," *Herrow v. Att'y Gen.*, 93 F.4th 107, 112 (3d Cir. 2024) (alteration in original) (quoting *Leia v. Ashcroft*, 393 F.3d 427, 433 n.5 (3d Cir. 2005)), but "[i]f the Board relies only on some of the grounds given for denying relief, we review only these grounds," *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017). "We review the BIA's legal conclusions *de novo* while we review its factual findings for substantial evidence," so we will "defer to the factual findings of the BIA as long as they are supported by evidence reasonably grounded in the record." *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 434 n.17 (3d Cir. 2023).

Even assuming Ms. Patel's credibility, as the BIA did, substantial evidence supports the agency's determination that the Petitioners failed to show past persecution. *See* 8 C.F.R. § 1208.13(b)(1). Although Ms. Patel was unfortunately attacked, her injuries were not severe. *See Liang v. Att'y Gen.*, 15 F.4th 623, 625 (3d Cir. 2021); *Chen v. Ashcroft*, 381 F.3d 221, 235 (3d Cir. 2004). And "[w]hile we do not mean to suggest that the severity of an injury should be measured in stitches, [Ms. Patel] has provided no other objective evidence to demonstrate that" her injuries were "severe enough to constitute persecution under our stringent standard." *Kibinda v. Att'y Gen.*, 477 F.3d 113, 120 (3d Cir. 2007); *see Voci v. Gonzales*, 409 F.3d 607, 615 (3d Cir. 2005) ("[O]ur cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution.").

This conclusion is not altered by the threats Ms. Patel faced, as they were not "concrete and menacing." *Blanco v. Att'y Gen.*, 967 F.3d 304, 312 (3d Cir. 2020) (quoting *Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 108 (3d Cir. 2020)). Even "considered in the context of the full record," "the cumulative effect of the[se] threat[s] and [their] corroboration" did not "pose[] a 'severe affront[] to [Ms. Patel's] life or freedom.'" *Herrera-Reyes*, 952 F.3d at 108 (quoting *Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 341 (3d Cir. 2008)).

Substantial evidence also supports the BIA's finding that the Petitioners did not have a well-founded fear of persecution. "An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality." § 1208.13(b)(2)(ii). Here, there was substantial

4

evidence that the Petitioners could relocate in India to escape the "highly localized harassment." A.R. 5 (quoting A.R. 67). Indeed, the only reason Ms. Patel gave for not being able to relocate was that to receive utilities she would "have to give [her] other card that has [her] address," which the BJP would somehow use to find her. A.R. 173. We agree it is "implausible . . . that 'the BJP Party would hunt [Ms. Patel] down anywhere in India.'" A.R. 4 (quoting A.R. 65). Because substantial evidence supports the agency's conclusion that the Petitioners did not suffer persecution or have a well-founded fear of persecution, the agency did not err in denying the Petitioners' application for asylum.[3]

Nor do we need to address the Petitioners' applications for protection under CAT. The discussion of CAT in their opening brief was limited to "challeng[ing] the IJ's decision denying Patel's application" under "Article 3 of the United Nations Connection Against Torture," and outlining the corresponding legal standard. Opening Br. 3. But "[a]n issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court." *Khan v. Att'y Gen.*, 691 F.3d 488, 495 n.4 (3d Cir. 2012) (quoting *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202–03 (3d Cir. 2004)). We will therefore not consider the denial of the Petitioners' applications for protection under CAT.

\* \* \*

For these reasons, we will deny the petition for review.

---

[3] Because substantial evidence supported the denial of asylum, withholding of removal was also properly denied. *See Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003) ("If [a petitioner] is unable to satisfy the standard for asylum, he necessarily fails to meet the standard for withholding of removal.").

FREEMAN, *Circuit Judge*, dissenting in part.

Because Patel did not develop a CAT argument in her opening brief, I join the majority opinion's resolution of that claim. However, I would grant Patel's petition with regard to her asylum and withholding-of-removal claims. In my view, the BIA committed the same errors here as it did in *Blanco v. Attorney General*, 967 F.3d 304 (3d Cir. 2020) and *Herrera-Reyes v. Attorney General*, 952 F.3d 101 (3d Cir. 2020). That is, it required Patel to show severe physical harm to establish past persecution; it ignored the violent context of the death threats against Patel; and it considered Patel's beatings and death threats separately. *Blanco*, 967 F.3d at 311; *Herrera-Reyes*, 952 F.3d at 108.

In its first error, the BIA said Patel did not suffer harm amounting to persecution because her physical injuries from the beatings were "minor." App. 14. The majority opinion also imposes a severe-physical-injury requirement for past persecution. Maj. Op. at 4. But we have stated again and again that we do not "condition a finding of past persecution on whether the victim required medical attention or even on whether the victim was physically harmed at all." *Blanco*, 967 F.3d at 311 (quoting *Doe v. Att'y Gen.*, 956 F.3d 135, 145 (3d Cir. 2020)) (cleaned up); *Herrera-Reyes*, 952 F.3d at 110 ("We have never reduced our persecution analysis to a checklist or suggested that physical violence—or any other single type of mistreatment—is a required element of the past persecution determination."). Rather, "outrageous conduct, even if limited to a single event without physical harm," can (and has) risen to the level of past persecution.

1

*Blanco*, 967 F.3d at 312 (citation omitted).[1] So the BIA errs when it requires a petitioner to show "physical harm, much less severe physical harm," to establish past persecution. *Id.*

Erring a second time, the BIA agreed with the IJ that the threats to Patel were not "concrete and menacing" because Patel did not present evidence that other Congress Party members were "targeted and killed or seriously injured as a result of their participation in . . . similar political activities." App. 14. But Patel received threats related to her political activities three times: in 2017, 2019, and 2021. The 2017 incident involved an oblique threat: Four BJP members told Patel that her refusal to leave the Congress Party would lead to a bad result. But when Patel again refused to leave the Congress Party in 2019, several BJP members pushed, kicked, and punched her and threatened to kill her and her family. And in 2021, after the BJP won an election, five men punched, kicked, and beat Patel with wooden sticks because of her work for the Congress Party. A crowd of onlookers spooked the attackers, who fled while telling Patel she would not survive their next encounter.

In the context of the beatings, the threats were clearly concrete and menacing. *Herrera-Reyes*, 952 F.3d at 107 (observing that a threat is concrete and menacing "when substantiated by both contemporaneous physical violence and by the petitioner's previous encounters with her persecutors"); *see also Liang v. Att'y Gen.*, 15 F.4th 623, 626 (3d Cir.

---

[1] In *Blanco*, we cited the example of *Chavarria v. Gonzalez*, 446 F.3d 508, 520 (3d Cir. 2006). There, "even though there was no evidence of physical harm, Chavarria's death threat, in light of his experience of being forced from his car and robbed at gunpoint, rose to the level of persecution." *Blanco*, 967 F.3d at 312.

2021) (noting that the petitioner "had good reason to take the threat[s] seriously, as he had just been . . . beaten"). And the additional requirement the BIA imposed—that Patel prove other Congress Party members had been killed or seriously injured for their political opinions—has no basis in our caselaw. Where a petitioner may demonstrate past persecution without having suffered physical injury herself, she plainly need not establish physical injury to others.

Rounding out its errors, the BIA failed to consider the cumulative effect of Patel's mistreatment. *See Blanco*, 967 F.3d at 313; *Herrera-Reyes*, 952 F.3d at 109; *Liang*, 15 F.4th at 626; *Fei Mei Cheng v. Att'y Gen.*, 623 F.3d 175, 193 (3d Cir. 2010). Despite nodding to a cumulative analysis, neither the BIA nor the IJ "consider[ed] how the surrounding acts of mistreatment"—particularly, the contemporaneous beatings— "corroborated the death threats that [Patel] received." *Blanco*, 967 F.3d at 314 (cleaned up) (noting that the BIA erred when it merely "paid lip service to the notion of cumulative analysis").

Applying our precedent, I would hold that Patel suffered past persecution and thus was entitled to a rebuttable presumption of a well-founded fear of future persecution. *See id*. at 315. And it was the government's burden to rebut that presumption. *Id.* "[I]t can do so by showing that there has been a 'fundamental change in circumstances' or that the noncitizen 'could avoid future persecution by relocating' to another part of his or her home country and 'it would be reasonable to expect the applicant to do so.'" *Id.* (quoting 8 C.F.R. § 1208.13(b)(1)(i)(A), (B), (ii)). But, rather than holding the government to its burden, the BIA faulted Patel for failing to prove that she would be unable to relocate

3

within India.  Due to this confluence of errors, I would remand for the agency to determine in the first instance whether the government can rebut the presumption of future persecution.  *See Herrera-Reyes*, 952 F.3d at 112.  Accordingly, I respectfully dissent in part from the judgment in this case.